UNITED STATES DISTRICT COURT　　　　　　　　For Online Publication Only
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
HOLLY KRAJESKI,

                Plaintiff,

           -against-　　　　　　　　　　　　　　**MEMORANDUM AND ORDER**
　　　　　　　　　　　　　　　　　　　　　　　19-CV-1385-JMA-ARL
BANK OF AMERICA, N.A., et al.,

                Defendants.
----------------------------------------------------------------X

**AZRACK, United States District Judge:**

    On March 8, 2019, plaintiff Holly Krajeski ("Plaintiff") filed a *pro se* complaint in this Court against defendant Bank of America. (Compl. (the "Complaint"), ECF No. 1.) Though "Does 1 through 100" are listed in the caption, the Complaint only makes allegations against Bank of America. (Id.) Bank of America ("Defendant") has moved to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (ECF No. 14.) For the reasons stated below, the Court grants Defendant's motion and dismisses the Complaint in its entirety.

## I. BACKGROUND

    The following facts are taken from the Complaint, the record before the Court, and filings from the related state court foreclosure action. In deciding a motion to dismiss, the Court may consider public records, including state court filings, and exhibits, such as copies of the mortgage and mortgage assignments, which are attached or integral to the Complaint. See Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004); Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004).

A. **Plaintiff's Mortgage**

On August 20, 2008, Plaintiff, along with non-party Anthony Krajeski, executed a note and mortgage for the property located at 160 Coram-Mount Sinai Road; Coram, New York 11727 (the "Subject Property"). (Declaration of Michael E. Blaine, ("Blaine Decl."), Ex. A–B, ECF Nos. 14–3, 14–4.) The mortgage was later assigned to Defendant, and this assignment was subsequently recorded in the Suffolk County Clerk's Office on March 10, 2012. (Blaine Decl., Ex. C, ECF No. 14–5.) Three years later, on July 15, 2015, the parties executed a Loan Modification Agreement. (Blaine Decl., Ex. D, ECF No. 14–6.) It stipulated that Defendant would forgive $365,750.20 of Plaintiff's outstanding loan balance, and that the loan would be reinstated with a new principal balance of $184,750.01 as if no default had occurred. (Id. at 4.)

B. **The Foreclosure of Plaintiff's Mortgage**

Shortly after execution of the Loan Modification Agreement, Plaintiff again defaulted on the loan. Defendant filed a foreclosure complaint in New York Supreme Court, Suffolk County, on November 4, 2016. (Blaine Decl., Ex. E, ECF No. 14–7.) The state court issued a Judgement of Foreclosure and Sale regarding the Subject Property on October 19, 2017. (Blaine Decl., Ex. F, ECF No. 14–8.) The Subject Property was then sold at a foreclosure auction on October 29, 2018. (Blaine Decl., Ex. G, ECF No. 14–9.)

C. **Plaintiff's Initial Lawsuit Against Defendant**

Approximately one month after Defendant filed the foreclosure complaint in state court, Plaintiff filed a complaint against Defendant in this Court on December 16, 2016 (the "2016 Action"). See Krajeski v. Bank of America, N.A., et al., 16-CV-6963, ECF. No 1. Plaintiff alleged that Defendant violated N.Y. G.B.L. § 349 ("GBL § 349") and committed fraud and misrepresentation in connection with the Loan Modification Agreement. In particular, she claimed

Defendant charged her fees to which it was not entitled and falsely described the purpose of other fees it charged her because such fees were impermissible under the Loan Modification Agreement. Plaintiff argued that since she was not obligated to pay such fees, Defendant "falsely rendered the Modified Loan delinquent." Id. at 4.

On April 12, 2017, the parties filed a stipulation by which they agreed that Plaintiff's complaint would be dismissed in its entirety, with prejudice, and each party would bear its own costs and attorneys' fees. See id., ECF No. 11. This Court issued an Order effectuating the Stipulation of Dismissal with Prejudice on April 13, 2017. See id., ECF No. 12.

**D**. **The Instant Litigation**

On March 8, 2019, approximately sixteen months after the state court issued the foreclosure judgment, Plaintiff filed the instant Complaint against Defendant in which she asserts claims for fraud, misrepresentation, and a violation of GBL § 349. (Compl., ECF No. 1.)

A substantial portion of the Complaint is a verbatim recitation of the allegations advanced in the complaint she filed in the 2016 Action. The instant Complaint does, though, contain certain additional allegations. Plaintiff states that on or about June 2, 2017, Defendant offered her another loan modification. (Id. at 3.) Although she attaches a copy of the offer letter to the Complaint, (ECF No. 1–1 at 2), she provides no additional details about this subsequent loan modification offer and does not assert any new causes of action based on it.

Plaintiff's Complaint also references several mailings from Defendant, including an "Escrow Account Disclosure Statement," dated June 9, 2017, that details possible repayment options for a shortfall in the available escrow, (ECF No. 1–3 at 2), and two statements entitled "Your Home Loan Account," dated August 17, 2015 and June 16, 2017, that provide estimates of outstanding amounts due on the foreclosed loan, (ECF No. 1–2 at 2; ECF No. 1–3 at 6). Plaintiff

3

appears to take issue with the amount Defendant claimed was past due in these letters and accuses Defendant of "double charging on the escrow" in its calculations. (Compl., ECF No. 1 at 3–4.) Plaintiff alleges:

> B of A claims $44,947.43 is past due, but there is no description on the amount due. There is no way the account could be negative $22,064.01 on escrow and $44,223.84 past due on payments. The escrow charges are included in the regular $1766.51 payments due. Therefore B of A is double charging on the escrow, since they stated that $44,223.84 + $22,064.01 = $66,287.85 is past due. (Exhibit "C") Aware of the reprehensible practices taking place by mortgage lenders and loan servicers, 49 state attorney generals and the federal government took action against the nation's largest service providers, including Wells Fargo. In February of 2012, a settlement was reached. The settlement, known as The National Mortgage Settlement, was the largest consumer financial protection settlement in the history of the United States (hereinafter, "NMS"). The NMS addressed many violations of law committed by BOA and the nation's largest lenders, as well as provided widespread relief to borrowers of these institutions, including restitution payments to those that wrongfully lost their homes to foreclosure at the hands of these lending institutions.

(Id. at 3–4.) With the exception of the exhibits and allegations described above, Plaintiff's Complaint is otherwise identical to the one she filed in the 2016 Action.

Plaintiff seeks the following relief:

- "[A] temporary restraining order, a preliminary injunction, and/or a permanent injunction enjoining Defendant from engaging in any foreclosure activity with respect to the Subject Property,"

- Judgment in her favor,

- "[A]n accounting of all payments improperly paid by Plaintiff to Defendant towards the Modified Loan,"

- An Order that Plaintiff can "omit any charges inappropriately applied to the Modified Loan,"

- "[T]he monetary equivalent of attorney's fees and costs,"

- "Special damages to account for Plaintiff's severe emotional distress,"

4

- "[P]unitive damages," and

- "[S]uch other and further relief as the Court deems just and proper."

(Id. at 12.)

On August 21, 2019, Defendant moved to dismiss the Complaint. (ECF No. 14.) Though Plaintiff submitted a letter in response to Defendant's request for a pre-motion conference, (ECF No. 13), she has not filed a response to Defendant's motion.

## II. DISCUSSION

### A. Standard of Review

The Court is mindful that when considering a motion to dismiss a *pro se* complaint, the Court must construe the complaint liberally and interpret it "to raise the strongest arguments that [it] suggest[s]." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (citation omitted). Nonetheless, "mere conclusions of law or unwarranted deductions need not be accepted." Bobrowsky v. Yonkers Courthouse, 777 F. Supp. 2d 692, 703 (S.D.N.Y. 2011) (internal quotation marks and citation omitted).

#### 1. Fed. R. Civ. P. 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) provides for the dismissal of a claim when there is a "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). A case is properly dismissed for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1) "when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000); see Fed. R. Civ. P. 12(b)(1). In reviewing a motion to dismiss under this Rule, the Court accepts all factual allegations in the complaint as true. Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998). In resolving a jurisdictional issue, the Court may consider other materials beyond the pleadings but may not rely on mere conclusions or hearsay statements

contained therein. J.S. ex rel. N.S. v. Attica Cent. Sch., 386 F.3d 107, 110 (2d Cir. 2004). The application of the Rooker-Feldman doctrine "goes to subject-matter jurisdiction." Hoblock v. Albany Cty. Bd. of Elections, 422 F.3d 77, 83 (2d Cir. 2005).

   **2. Fed. R. Civ. P. 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a claim when a plaintiff fails to allege sufficient facts "to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); see Fed. R. Civ. P. 12(b)(6). A claim is facially plausible only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). Mere labels and legal conclusions will not suffice. Twombly, 550 U.S. at 555. In reviewing a motion to dismiss, the Court must accept "as true the complaint's factual allegations and draw[] all inferences in the plaintiff's favor." Karedes v. Ackerley Grp., Inc., 423 F.3d 107, 113 (2d Cir. 2005). Motions to dismiss invoking *res judicata* are properly brought under Rule 12(b)(6). See Wiercinski v. Mangia 57, Inc., No 09-CV-4413, 2010 WL 2681168, at *1 (E.D.N.Y. July 2, 2010).

**B**. **Rooker-Feldman Doctrine**

Defendant first argues that this Court lacks jurisdiction over this action pursuant to the Rooker-Feldman doctrine. See Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923) (holding that only the Supreme Court can entertain a direct appeal from a state court judgment); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 486 (1983) (finding that federal courts do not have jurisdiction over claims which are "inextricably intertwined" with prior state court determination). This doctrine is the "clear principle that federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments." Hoblock, 422 F.3d at 84.

6

A district court does not have jurisdiction to entertain a plaintiff's claims that are "inextricably intertwined" with a state court's determinations and cannot consider "a claim to reverse or modify a state court judgment." Phifer v. City of New York, 289 F.3d 49, 55 (2d Cir. 2002). The Rooker-Feldman doctrine precludes a district court from hearing "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005). Courts in the Second Circuit have "consistently held that any attack on a judgment of foreclosure is clearly barred by the Rooker-Feldman doctrine." Ashby v. Polinsky, No. 06-CV-6778, 2007 WL 608268, at *1 (E.D.N.Y. Feb. 22, 2007) (internal quotation marks and citations omitted), aff'd, 328 F. App'x 20 (2d Cir. 2009).

For the Rooker-Feldman doctrine to apply, the Second Circuit requires four elements to be met: (1) "the federal-court plaintiff must have lost in state court," (2) "the plaintiff must complain of injuries caused by a state-court judgment," (3) "the plaintiff must invite district court review and rejection of that judgment," and (4) "the state-court judgment must have been rendered before the district court proceedings commenced." Hoblock, 422 F.3d at 85 (internal quotation marks and citations omitted). The first and fourth requirements are procedural, while the second and third requirements are substantive. Id. As discussed below, all four of these requirements are met here, and the Rooker-Feldman doctrine therefore bars Plaintiff's claims.

**1. Procedural Requirements**

The procedural requirements of the Rooker-Feldman doctrine have been satisfied. The first requirement has been met because Plaintiff lost in state court when the New York Supreme Court, Suffolk County, rendered a Judgment of Foreclosure and Sale on October 19, 2017. (Blaine

7

Decl., Ex. F, ECF No. 14–8.) Additionally, the fourth requirement has been met because the state court judgment was rendered before Plaintiff commenced the instant action when she filed the Complaint on March 8, 2019. (Compl., ECF No. 1.) Accordingly, both procedural requirements of the Rooker-Feldman doctrine have been met.

### 2. Substantive Requirements

The substantive requirements of the Rooker-Feldman doctrine have likewise been satisfied. The second requirement has been met because Plaintiff is complaining of injuries caused by the state foreclosure action. She argues that her loan was placed into default as a result of Defendant's misrepresentations and fraud regarding the fees she owed. The circumstances regarding her default are the basis for the state foreclosure action. In addition, Plaintiff's prayer for relief requests "a temporary restraining order, a preliminary injunction, and/or a permanent injunction enjoining Defendant from engaging in any foreclosure activity with respect to Subject Property" and seeks "an accounting of all payments improperly paid by Plaintiff to Defendant towards the Modified Loan." (Compl., ECF No. 1 at 12.) Therefore, Plaintiff's "complaint can be construed as alleging injuries that occurred as a result of the judgment—specifically the foreclosure on plaintiff's property." Done v. Option One Mortg., No. 09-CV-4770, 2011 WL 1260820, at *6 (E.D.N.Y. Mar. 30, 2011) (barring injunctive relief and damages in challenge to foreclosure judgment). In arguing that the state court judgment was predicated on a default that only happened because she did not pay the allegedly fraudulent and misrepresented fees, Plaintiff has alleged injuries that occurred as a result of a state court judgment. Thus, the second requirement is met.

The third requirement has also been satisfied because Plaintiff can only prevail here if the Court reviews and rejects the state court's judgment. In asking the Court to enjoin any foreclosure activity, "it is plain that [Plaintiff] is inviting this court to 'reject'" the state court's decision.

8

Trakansook v. Astoria Fed. Sav. & Loan Ass'n, No. 06-CV-1640, 2007 WL 1160433, at *5 (E.D.N.Y. Apr. 18, 2007), aff'd, No. 07-2224-CV, 2008 WL 4962990 (2d Cir. Nov. 21, 2008). Plaintiff's factual allegations and the relief she seeks are inextricably intertwined with the state court's foreclosure judgment. She has thus invited this Court to review and reject the state court's foreclosure judgment. See Done, 2011 WL 1260820, at *6. The third element has therefore been met.

Plaintiff clearly seeks to reverse the state court's foreclosure judgment. The Court therefore concludes that the requirements of the Rooker-Feldman doctrine have been met. Accordingly, the Court lacks subject-matter jurisdiction over Plaintiff's claims, and the Complaint should be dismissed in its entirety.

## C. *Res Judicata*

Alternatively, even if the Rooker-Feldman doctrine did not deprive the Court of subject-matter jurisdiction, all of Plaintiff's claims are barred by the doctrine of *res judicata*. Pursuant to this doctrine, also known as claim preclusion, "'[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" St. Pierre v. Dyer, 208 F.3d 394, 399 (2d Cir. 2000) (quoting Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 398 (1981)); see also EDP Med. Computer Sys., Inc. v. United States, 480 F.3d 621, 624 (2d Cir. 2007). *Res judicata* applies to defenses that could have been raised in the prior action as well. Woods v. Dunlop Tire Corp., 972 F.2d 36, 38 (2d Cir. 1992) ("Thus, *res judicata* or claim preclusion prevents a party from litigating any issue or defense that could have been raised or decided in a previous suit, even if the issue or defense was not actually raised or decided."). The principles governing the application of *res judicata* bind all litigants, including

*pro se* plaintiffs.  Done v. Wells Fargo Bank, N.A., No. 08-CV-3040, 2009 WL 2959619, at *3 (E.D.N.Y. Sept. 14, 2009).

*Res judicata* bars the instant action because of the prior federal and state court actions.  The doctrine of *res judicata* applies when three circumstances are met: (1) there was "a previous action that resulted in a final adjudication on the merits," (2) "the party against whom *res judicata* is to be invoked was party to the previous action or in privity with a party to that action," and (3) "the claims involved in the current case were, or could have been, raised in the previous action." Talley v. LoanCare Servicing, Div. of FNF, No. 15-CV-5017, 2018 WL 4185705, at *6 (E.D.N.Y. Aug. 31, 2018).  With respect to state court judgments, a federal court applying the doctrine of *res judicata* "must keep in mind that a state court judgment has the same preclusive effect in federal court as the judgment would have had in state court." Burka v. New York City Transit Auth., 32 F.3d 654, 657 (2d Cir. 1994).  When a federal court considers the preclusive effect of a state court judgment, it must look to the law of the state in which the judgment was rendered.  See Ferris v. Cuevas, 118 F.3d 122, 125–26 (2d Cir. 1997).  Courts in New York apply a transactional analysis of *res judicata* that bars "a later claim arising out of the same factual grouping as an earlier litigated claim even if the later claim is based on different legal theories or seeks dissimilar or additional relief." Jacobson v. Fireman's Fund Ins. Co., (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)).

The first element is met because both the federal and state court actions resulted in a final adjudication on the merits.  Plaintiff's allegations regarding the purportedly fraudulent and misrepresented fees assessed pursuant to the Modified Loan Agreement are identical to the claims she previously raised in the 2016 Action.  See Krajeski v. Bank of America, N.A., et al., 16-CV-6963, ECF No. 1.  Those claims were ultimately resolved through a settlement agreement pursuant

to which Plaintiff and Defendant filed a stipulation of dismissal with prejudice. See id., ECF No. 11. For purposes of *res judicata*, "[i]t is clear that a dismissal, with prejudice, arising out of a settlement agreement operates as a final judgment." Marvel Characters, Inc. v. Simon, 310 F.3d 280, 287 (2d Cir. 2002). Additionally, the foreclosure judgment in state court is a final adjudication on the merits. Trakansook, 2007 WL 1160433, at *7. Therefore, the first element for the application of *res judicata* has been met because the previous actions in federal and state courts resulted in final adjudications on the merits.

The second element is also met because the party against whom *res judicata* is to be invoked, Plaintiff, was a party to both the 2016 Action and the state foreclosure action.

Finally, the third element is met because the claims involved in the current case were, or could have been, raised in the previous actions. As described earlier, nearly all of Plaintiff's claims in the instant action were previously raised in the 2016 Action. Additionally, with respect to the state court action, Plaintiff could have challenged the foreclosure by raising her claims of misrepresentation and fraud as defenses—in particular, that the unpaid fees that led to her default should not have been assessed because they were based on misrepresentation and fraud. See Talley, 2018 WL 4185705, at *6 (finding that the "claims could have been raised as a defense to foreclosure in state court, and therefore cannot be relitigated in a subsequent suit in federal court"); Solomon v. Ocwen Loan Servicing, LLC, No. 12-CV-2856, 2013 WL 1715878, at *5 (E.D.N.Y. Apr. 12, 2013) ("The state-law claims asserted by plaintiff . . . attack the ability of defendants to enforce [the mortgage] in the foreclosure proceedings. These claims could have been raised as a defense to foreclosure in state court, and therefore cannot be relitigated in a subsequent suit in federal court."). Plaintiff likewise could have raised her claim under GBL § 349 in the state foreclosure litigation. See Campbell v. Bank of Am., Nat'l Ass'n, No. 19-CV-11, 2019 WL

4083078, at *5 (S.D.N.Y. Aug. 29, 2019) ("In any event, all of plaintiff's claims, including his claim under Section 349, are also barred by *res judicata* . . . [because, inter alia,] plaintiff's claims all arise from the notes and mortgages at issue in state court, and plaintiff could have asserted—and, as to many of his claims, did assert—his claims in this case as defenses in the state court action.") (emphasis in original).

Furthermore, "[c]ourts in this Circuit have found that a plaintiff's federal-court claim is precluded by a state-court judgment in a foreclosure action when the plaintiff has alleged, in federal court, that the defendants acted improperly in connection with the making, validity or enforcement of the underlying mortgage." George v. Nationstar Mortg., LLC, No. 16-CV-261, 2017 WL 3316065, at *7 (E.D.N.Y. Aug. 2, 2017). Plaintiff's allegations regarding the fees assessed against her and the amount due on her mortgage are claims that accuse Defendant of acting improperly in enforcing the underlying mortgage. Any claims regarding the enforcement of the underlying mortgage are precluded by the state foreclosure action.

Additionally, the allegations that Plaintiff raises for the first time in the instant litigation relating to the June 2, 2017 loan modification offer and the letters dated August 17, 2015 and June 9 and 16, 2017, see supra 3–4, all took place *before* the state court entered its Judgement of Foreclosure and Sale on October 19, 2017. Plaintiff had the opportunity to raise these additional claims as defenses in the state foreclosure action before the state court entered judgment. Thus, the third element has been met.

Therefore, even if Rooker-Feldman did not deprive this Court of subject-matter jurisdiction over Plaintiff's claims, the claims are barred by the doctrine of *res judicata* and must be dismissed.

### D. Plaintiff's N.Y. G.B.L. § 349 Claim

Even if Rooker-Feldman and *res judicata* did not bar Plaintiff's GBL § 349 claim, this claim also fails because it is barred by collateral estoppel and, in any event, the Complaint fails to state a plausible claim for relief under GBL § 349. Plaintiff accuses Defendant of violating GBL § 349 by committing "deceptive acts or practices in the conduct of their business" in how it described the purpose of a portion of an escrow payment and in assessing "illegitimate" fees that Plaintiff contends are barred by the Modified Loan Agreement. (Compl., ECF No. 1 at 10.)

"Collateral estoppel, or issue preclusion, 'precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party . . . whether or not the tribunals or causes of action are the same.'" Sullivan v. Gagnier, 225 F.3d 161, 166 (2d Cir. 2000) (citing Ryan v. New York Tel. Co., 62 N.Y.2d 494, 467 N.E.2d 487 (1984)). "To determine whether the issue in the first litigation was necessarily decided, the focus is on the rights, questions or facts that underlie a judicial decision, not the legal theories underlying the complaint." Yeiser v. GMAC Mortg. Corp., 535 F. Supp. 2d 413, 424–25 (S.D.N.Y. 2008) (citing Coveal v. Consumer Home Mort., Inc., No. 04-CV-4755, 2005 WL 2708388, at *5 (E.D.N.Y. Oct. 21, 2005)). "New York requires only that the issue have been properly raised by the pleadings or otherwise placed in issue and actually determined in the prior proceeding." Id. The amount Plaintiff owed under the mortgage, which is the basis of Plaintiff's GBL § 349 claim, was placed in issue in the state court action. In rendering the foreclosure judgment and calculating the specific amount Plaintiff owed, the state court necessarily had to determine whether the fees assessed against Plaintiff had been miscalculated or misstated. Plaintiff cannot bring this subsequent action to relitigate the amount she owes under the loan. Therefore,

Plaintiff's GBL § 349 claim regarding the descriptions and assessments of fees are barred by collateral estoppel.

Further, Plaintiff has failed to state a plausible claim for relief. To state a prima facie case under GBL § 349, a plaintiff must demonstrate that "(1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." Maurizio v. Goldsmith, 230 F.3d 518, 521 (2d Cir. 2000). A complaint alleging a violation of GBL § 349 "must allege facts demonstrating that the disputed conduct had a broad impact on consumers at large and not just on the plaintiff." Miller v. HSBC Bank U.S.A., N.A., No. 13-CV-7500, 2015 WL 585589, at *8 (S.D.N.Y. Feb. 11, 2015) (citing Vitolo v. Mentor H/S, Inc., 426 F. Supp. 2d 28, 36 (E.D.N.Y. 2006), aff'd, 213 F. App'x. 16 (2d Cir. 2007)). "Where a plaintiff makes only conclusory allegations of impact on consumers at large, a GBL § 349 claim must be dismissed." Id. (dismissing GBL § 349 claim where borrower failed to allege damage to the consuming public at large but instead asserted "nothing more than injury to herself resulting from a private contractual dispute" with the lender). The Complaint details conduct that affected Plaintiff alone. Plaintiff has not alleged that Defendant's purported assessment of fees in violation of her Modified Loan Agreement and its misclassification of her escrow payments were actions directed at consumers at large. Plaintiff has therefore failed to allege a claim under GBL § 349.

**E**. **Leave to Amend**

A *pro se* plaintiff should ordinarily be given the opportunity "to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Shomo v. City of New York, 579 F.3d 176, 183 (2d Cir. 2009) (internal quotation marks and citation omitted). Though "*pro se* plaintiffs are generally given leave to amend a deficient complaint, a

district court may deny leave to amend when amendment would be futile." Hassan v. U.S. Dep't of Veterans Affairs, 137 F. App'x 418, 420 (2d Cir. 2005).

Here, the Court has carefully considered whether Plaintiff should be granted leave to amend the Complaint. Having decided that Plaintiff's claims are barred by the Rooker-Feldman doctrine, *res judicata*, and collateral estoppel, the Court finds that any amendment of Plaintiff's Complaint would be futile. Consequently, the Court declines to grant Plaintiff leave to amend.

### III. CONCLUSION

For the reasons stated above, the Court grants Defendant's motion and dismisses Plaintiff's Complaint in its entirety. Although Plaintiff paid the filing fee to commence this action, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore, should Plaintiff seek leave to appeal in forma pauperis, such status is denied for the purpose of any appeal. See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

The Clerk of Court is respectfully directed to close this case and send a copy of this Order to *pro se* Plaintiff.

**SO ORDERED.**

Dated: January 2, 2020
      Central Islip, New York

                                                          /s/ (JMA)
                                            JOAN M. AZRACK
                                            UNITED STATES DISTRICT JUDGE